485 So.2d 1372 (1986)
Robert F. LARSEN, Appellant,
v.
STATE of Florida, Appellee.
No. BC-157.
District Court of Appeal of Florida, First District.
April 3, 1986.
Michael E. Allen, Public Defender, Steven L. Bolotin, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Patricia Conners, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Larsen appeals his conviction of second degree murder after a jury trial, contending: (1) that the trial court erred in refusing to instruct the jury on justifiable use of non-deadly force under section 776.012, Florida Statutes (1983); (2) the evidence at trial was insufficient to support a conviction of second degree murder; and (3) the trial court erred in sentencing appellant under sentencing guidelines in effect at the time of sentencing, rather than at the time of commission of the offense. Finding no reversible error, we affirm.
On the day of the homicide, appellant and his wife, Jackie, went to his employer's home, which also served as an office for the conduct of the employer's business. The employer was out-of-town, and no other *1373 persons were present in the house. Appellant and his wife had been having marital problems, and on that day his wife began complaining again about their financial problems, appellant's drinking, gambling, and his involvement with another woman. During the argument, Jackie shook her finger in appellant's face and grabbed his shirt. Appellant pushed her hand away from his face, whereupon she slapped his face. When her arm came back up, appellant grabbed it and pulled her towards him. He then slapped her hard across the face and they both fell. According to appellant, he did not see Jackie's head strike the floor, but he heard the impact of her fall. She died, according to appellant, a short time later. A medical examiner testified that based upon an autopsy, the cause of death was a fracture of the back of the skull, which could have been caused either by her moving head impacting on a flat, hard and unyielding surface, or by a heavy, flat-surfaced object severely impacting on her stationary head. Appellant did not report his wife's death. Instead, he placed her in the car, and drove to a downtown parking lot where he hid the car, leaving his wife's body in it. He wiped fingerprints from the car, and took his wife's wallet and jewelry in order to make it appear that a robbery had occurred. Two days after the homicide he reported to police that his wife was missing. In the meantime, he had moved the car, with the wife's body still in it, to a parking lot at an apartment complex, where it was discovered nearly three weeks later. After the discovery of his wife's body, appellant again reiterated to the police the story of his wife's alleged disappearance after he last saw her driving on I-95, where he states she had dropped him off to repair a disabled car. Later the same day, he gave another account in which he claimed that Jackie tripped and fell over something in the dining area of his employer's home while they were good-naturedly wrestling and pushing one another. A week later, after appellant was informed that a polygraph test indicated that he was "showing deception," he gave a different account of the fatality, admitting that the fatal injury occurred after an argument and altercation in which he slapped his wife and she fell backward to the floor.
On the first point, we agree with the state's contention that it was not error for the trial court to refuse an instruction concerning the use of non-deadly force under section 776.012, Florida Statutes (1983). Under the statute, a person is justified in the use of force, except deadly force, "when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's eminent use of unlawful force." Id. The evidence below would not support a jury instruction based on this statute. At no time did appellant state that he reasonably believed he had to strike his wife to defend himself, nor to prevent the imminent use of unlawful force against him. The evidence only shows that appellant struck his wife in anger, or in retaliation, not in self-defense.
We also find unconvincing appellant's contention that the evidence was not sufficient to support a verdict of second degree murder. The grade or degree of a homicide, and the intent with which a homicidal act was committed are questions of fact dependent upon the circumstances of the case, and are typically for resolution by a jury. 16 Fla.Jur.2d, Criminal Law, § 1102. At the time of her death, appellant's wife was 49 years of age, weighed 95 pounds, and was partially disabled from arthritis. It was for the jury to evaluate the extent of the malevolence or depravity evidenced by appellant when he struck her, in anger, with force sufficient to cause her to suffer a fatal skull fracture when she hit the floor. The relationship between the parties, the absence of sufficient provocation or necessity for the use of force on this occasion, and the relative harm-causing potential of the two combatants distinguishes this case from those relied upon by appellant, e.g., Pierce v. State, 376 So.2d 417 (Fla. 3d DCA 1979), and Martinez v. State, 360 So.2d 108 (Fla. 3d DCA 1978).
As this court stated in Hines v. State, 227 So.2d 334, 335 (Fla. 1st DCA 1969):

*1374 "Depraved mind" within the second degree murder statute has been variously defined as importing malice in the sense of ill will, hatred, or evil intent, and as an inherent deficiency of moral sense and rectitude. Ramsey v. State, 114 Fla. 766, 154 So. 855. It has also been stated that malice is not limited in its meaning to hatred, ill will and malevolence, but "denotes a wicked and corrupt disregard of the lives and safety of others ... a failure to appreciate social duty". 40 Am.Jur.2d, Homicide, Section 50.
We think the evidence here was sufficient for the jury to determine whether the homicide amounted to murder in the second degree.
On the third point, appellant's contention that changes in the guidelines were improperly applied retroactively in sentencing appellant, we adhere to our decision in Wilkerson v. State, 480 So.2d 213 (Fla. 1st DCA 1985), in which we held that the Supreme Court's opinion in State v. Jackson, 478 So.2d 1054 (Fla. 1985), effectively disposed of the argument that the ex post facto doctrine forecloses application of a guidelines amendment which was not in effect at the time of commission of the crime or election of sentencing under the guidelines, even though the effect of the amendment would be to enhance the presumptive sentence under the guidelines. As we did in Wilkerson, however, we again certify to the Supreme Court as a question of great public importance the following:
WHETHER ALL SENTENCING GUIDELINES AMENDMENTS ARE TO BE CONSIDERED PROCEDURAL IN NATURE SO THAT THE GUIDELINES AS MOST RECENTLY AMENDED SHALL BE APPLIED AT THE TIME OF SENTENCING WITHOUT REGARD TO THE EX POST FACTO DOCTRINE.
The judgment and sentence appealed from is therefore
AFFIRMED.
MILLS, SMITH and THOMPSON, JJ., concur.